**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:   **CV 11-09178 SJO (JCx)**           DATE:  **October 6, 2014**

TITLE:       **Michael Alakozai v. Chase Investment Services Corp.**

========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                 Not Present
Courtroom Clerk                                 Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**       **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                      Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** [Docket No. 117]

This matter is before the Court on Plaintiffs Michael Alakozai ("Alakozai") and Steven Pitts' ("Pitts") (together, "Plaintiffs") Motion for Class Certification ("Motion"), filed August 4, 2014.  On August 25, 2014, Defendant Chase Investment Services Corp. ("CISC") filed its Opposition  to Plaintiffs' Motion ("Opposition").  Plaintiffs filed a Reply on September 8, 2014.  The Court granted leave to file, and accepted for filing, CISC's Surreply on September 16, 2014.  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for September 22, 2014. *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court **DENIES** the Motion.

I.     PROCEDURAL AND FACTUAL BACKGROUND

CISC is a broker-dealer and investment advisor registered with the U.S. Securities and Exchange Commission ("SEC") and a member of the Financial Industry Regulatory Authority ("FINRA"). (Compendium of Evidence in Supp. of Def.'s Opp'n ("CE"), ECF No. 132, Ex. 5, Decl. of Heather Emmert ("Emmert Decl.") ¶ 3, ECF No. 132-2.)  CISC sells a wide variety of securities and other financial products, including mutual funds and variable annuities, primarily to retail clients at its affiliated bank branch locations.  (Third Am. Compl. ("TAC") ¶ 21, ECF No. 105; Decl. of Allison B. Willard Attaching Redacted Versions of Sealed Documents ("Willard Decl."), ECF No. 147, Ex. B 1, ECF No. 148.)

Plaintiffs are former Financial Advisors ("Advisors") for CISC.  (Mot. 1.)  Alakozai was employed by CISC's predecessor, Washington Mutual, in its Concord, California office between  October 2007 and April 2009.  (Decl. of Michael Alakozai in Supp. of Mot. ("Alakozai Decl.") ¶ 2, ECF No. 117-5.)  Between May and October 2009, Alakozai was employed by CISC in its Santa Clara, California office.  (Alakozai Decl. ¶ 2.)  Pitts was employed by CISC in its Orange, California office between May 2009 and August 2010.  (Decl. of Steven Pitts in Supp. of Mot. ("Pitts Decl.") ¶ 2, ECF No. 117-6.)  In general, CISC Advisors "recommend a wide variety of approved investment options for clients and prospective clients, including managed money accounts, mutual funds, and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 11-09178 SJO (JCx)**          **DATE:  October 6, 2014**

fixed and variable annuities."  (CE Ex. 4, Decl. of John P. Quinn ("Quinn Decl.") ¶ 4, ECF No. 132-2.)  As Advisors, Plaintiffs were compensated on a commission basis without overtime pay (TAC ¶ 22) and were not advised by CISC that they were entitled to daily, 30-minute uninterrupted meal breaks.  (Alakozai Decl. ¶ 7; Pitts Decl. ¶ 7.)[1]

On July 15, 2011, Alakozai filed this action individually in the United States District Court Northern District of California.  (Compl., ECF No. 1.)  Pitts was included as a party in the putative class action filed August 3, 2011.  (First Am. Compl., ECF No. 8.)  On November 1, 2011, the action was transferred to this Court.  (Order Transferring Venue, ECF No. 36.)  In the operative complaint, Plaintiffs assert five causes of action for:  (1) restitution of overtime wages pursuant to California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.,* ("FLSA") (TAC ¶¶ 30-32); (2) restitution of overtime wages pursuant to the UCL, for violations of the Industrial Welfare Commission's Wage Order 4-2001 (TAC ¶¶ 34-36); (3) restitution of wage deductions and reimbursement expenses under the UCL, for violations of California Labor Code sections 221 and 2802 (TAC ¶¶ 38-41); (4) waiting time penalties for violation of California Labor Code sections 203, 210, 226.3, 558, and 1174.5 (TAC  ¶ 43); and (5) labor code penalties, pursuant to California Labor Code section 2699(e). (TAC ¶ 45.)  On September 8, 2014, Plaintiffs withdrew their cause of action for restitution of wage deductions and reimbursement expenses.  (Reply 6, ECF No. 135.)

On August 4, 2014, Plaintiffs filed the instant Motion seeking certification of a class (the "Class") defined as current and former Advisors or Advisor Trainees who were employed by CISC, its predecessors, or successors in California after July 15, 2007, and who were compensated on a commission or salary basis.  (Mot. 1; *see also* TAC ¶¶ 3-4.)

II.     DISCUSSION

"Class actions have two primary purposes:  (1) to accomplish judicial economy by avoiding multiple suits; and (2) to protect the rights of persons who might not be able to present claims on an individual basis."  *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)).  Rule 23(a) of the Federal Rules of Civil Procedure provides that a class action is only appropriate if four prerequisites are met:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law

---

[1]  CISC objects to Pitts' testimony that he was never advised that he was entitled to a daily 30-minute meal break as irrelevant on the grounds that CISC is not required to ensure that employees like Pitts, "who are subject to certain exemptions," take a meal break.  ([CISC's] Objections to Decls. Submitted in Supp. of Pls.' Mot. 2, ECF No. 133.)  Whether Plaintiffs are exempt from various requirements otherwise imposed by California law, including the requirement that they be provided a 30-minute meal break, is a question of law and an underlying issue in the instant action.  Accordingly, CISC's objection is overruled.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  **CV 11-09178 SJO (JCx)**          DATE:  **October 6, 2014**

or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If all of these prerequisites are satisfied, the court must then determine whether the class action is maintainable under one of Rule 23(b)'s subdivisions. Fed. R. Civ. P. 23(b).

A party seeking to certify a class may not merely rest on his pleadings. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are **in fact** sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Trial courts are expected to engage in a "rigorous analysis" to determine if the prerequisites of Rule 23 have been satisfied. *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161). This rigorous analysis will often "overlap with the merits of the plaintiff's underlying claim." *Id.*; *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1195 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

    A.    Rule 23(a) Requirements

        1.    Numerosity

The numerosity requirement is met where the party seeking certification shows the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *In re Cooper Cos. v. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citation omitted). "A proposed class of at least forty members presumptively satisfies the numerosity requirement." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012); *see also Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). "A bare allegation of numerosity is insufficient to meet Rule 23's prerequisite." *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 367 (C.D. Cal. 1997). However, where Plaintiffs' allegations "plainly suffice" to meet the numerosity requirement, "it is not necessary to state the exact number of class members." *Cooper,* 254 F.R.D. at 634 (citing *Schwartz v. Harp,* 108 F.R.D. 279, 281-82 (C.D. Cal. 1985)).

In his deposition, CISC's Regional Director for the Desert Mountain region testified that CISC currently employs 1,054 Advisors in California. (Quinn Decl. ¶ 3.) CISC's Data Analytics Manager testified that CISC employed 1,202 Advisors between September 26, 2008 and May 15, 2014. (CE Ex. 25, Decl. of Emil Isner 1, ECF No. 132-5.) CISC does not dispute that the proposed class meets the numerosity standard or that joinder of the California Advisors would be impracticable.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 11-09178 SJO (JCx)</u>          **DATE:**  <u>October 6, 2014</u>

(*See generally* Opp'n to Mot. ("Opp'n"), ECF No. 129.)  The Court concludes that the Class is sufficiently numerous under Rule 23(a).

        2.    <u>Commonality</u>

Commonality under Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (internal citation omitted).  This "does not mean merely that they have all suffered a violation of the same provision of law." *Id.*  Rather, class-wide claims "must depend upon a common contention . . . of such a nature that . . . determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *accord Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (common answers generated must be "apt to drive the resolution" of class claims).  "In order to assess commonality, 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012) (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 160).  However, "[t]he court may not go so far . . . as to judge the validity of [the] claims." *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted).

Under California law, unless an exemption applies, an employee is generally entitled to receive overtime wages equal to one and one-half times his regular pay for hours worked in excess of forty hours per week or eight hours per day. *See Greko v. Diesel U.S.A., Inc.,* 277 F.R.D. 419, 422 (N.D. Cal. 2011).  Similarly, under the FLSA, an employee is entitled to overtime wages unless he is exempt. *See Cleveland v. City of L.A.,* 420 F.3d 981, 983 (9th Cir. 2005).  The applicability of an exemption to a particular employee under either California or federal law is an affirmative defense that the employer must prove. *See Combs v. Skyriver Commc'ns, Inc.,* 159 Cal. App. 4th 1242, 1254 (2008) (citing *Ramirez v. Yosemite Water Co.,* 20 Cal. 4th 785, 794 (1999)) (exemptions under California law); *Wood v. Kinetic Sys., Inc.,* No. CV 10-00001 CWD, 2011 WL 1484117, at * 4 (D. Idaho Apr. 19, 2011) (exemptions under FLSA).  For the purposes of class certification,  "[the] defendant has the burden of proof on the merits of its affirmative defenses [and] plaintiffs have the burden of proof in regard to satisfying Rule 23." *Brady v. Deloitte & Touche LLP*, No. CV 08-00177 SI, 2012 WL 1059694, at *5 (N.D. Cal. Mar. 27, 2012) (citing *Marlo v. United Parcel Serv., Inc.,* 639 F.3d 942, 947 (9th Cir. 2011)).
The dispute in this case, and the basis for Plaintiffs' claims for restitution and penalties, is whether CISC misclassified the Class members as exempt employees under California or  federal law.[2]

---

[2]  Plaintiffs contend that CISC is limited to claiming only the administrative exemption and federal highly compensated exemption because CISC "testified through its corporate designee that [it] is claiming" only those two exemptions.  (Reply 2.)  This argument is without merit.  In his deposition, CISC's corporate designee only testified as to his knowledge of the legal conclusion another CISC employee reached regarding whether the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** **CV 11-09178 SJO (JCx)**          **DATE:** **October 6, 2014**

(Mot. 1.)  More specifically, Plaintiffs allege that CISC misclassified the Class members as exempt employees under: (1) the administrative employee exemption recognized by California's Industrial Welfare Commission ("IWC") (Cal. Code. Regs. tit. 8, § 11040.1(A)(2)); (2) the IWC's commissioned salesperson exemption (Cal. Code. Regs. tit. 8, § 11040); and (3) the federal commissioned salesperson exemption (29 U.S.C. § 207(i)).  (Mot. 1-2.)

                    a.    Administrative Employee Exemption

The IWC's Wage Order 4-2001 ("Wage Order") applies to "all persons employed in professional, technical, clerical, mechanical, and similar occupations whether paid on a time, piece rate, commission, or other basis" who are not subject to an exemption.   Cal. Code. Regs. tit. 8, § 11040.1(A).  Among other protections, the Wage Order requires that employers provide their non-exempt employees:  (1) overtime pay for employment beyond eight hours per day or 40 hours per week; (2)  time records of hours worked and itemized wage statements; and (3) meal periods of not less than 30 minutes for work periods of more than five hours.  Cal. Code Regs. tit. 8, §§ 11040.3, 11040.7, 11040.11.  The administrative employee exemption ("administrative exemption") applies to persons whose primary duties involve, among other things:  (1) performing non-manual work directly related to the management policies or general business operations of the employer or its customers and (2) executing special assignments and tasks under only general supervision or (3) performing work requiring specialized training, experience, or knowledge under only general supervision.  Cal. Code Regs. tit. 8, § 11040.1(A)(2).

The question of whether Plaintiffs are administrative employees exempt from coverage under the Wage Order is "a mixed question of law and fact."  *Rieve v. Coventry Health Care, Inc.,* 870 F. Supp. 2d 856, 866 (C.D. Cal. 2012) (citing *Ramirez,* 20 Cal. 4th at 794).  The applicability of an exemption "must be resolved by examining the actual work performed by the employees." *Rosenberg v. Renal Advantage, Inc.,* No. CV 11-02152 GPC, 2013 WL 3205426, at *8 (S.D. Cal. June 24, 2013).  Plaintiffs must show that "common questions and answers drive the resolution of the litigation on [the exemption] issue."  *Rosenberg,* 2013 WL 3205426, at *8.  "Dissimilarities within the proposed class . . . have the potential to impede the generation of common answers." *Dukes,* 131 S. Ct. at 2551.

_____

Advisors were exempt and under what authority an exemption would apply.  (*See* Decl. of Jeffrey K. Compton in Supp. of Pls.' Reply ("Compton Decl."), ECF No. 135-1, Ex. A 108-15, ECF No. 135-2.)  CISC has consistently plead that its Advisors were exempt under several authorities, not just the two cited by Plaintiffs.  (*See* Joint Report 4, ECF No. 103; Answer to Amended Complaint ("Answer") 14-15, ECF No. 106; *see generally* Opp'n.) These pleadings, particularly CISC's Answer, provide clear notice of CISC's defenses. *Wood*, 2011 WL 1484117, at * 4.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 11-09178 SJO (JCx)**          **DATE:**  **October 6, 2014**

Plaintiffs claim that the applicability of the administrative exemption to the Class members can be decided based the following common questions:  (1) whether federal, state, and FINRA rules and regulations, the Interagency Statement on Retail Sales of Non-deposit Investment Products, or CISC's internal policies and procedures mandate that all Class members perform under general supervision; (2) whether Class members are primarily engaged in the performance of work directly related to the management policies or general business of CISC or its clients; and (3) whether the Class members are primarily engaged in sales.  (Mot. 2.)

i.     General Supervision

Plaintiffs maintain that under the FINRA rules and "a myriad of other Federal and State laws and regulations," CISC "has been at all relevant times required to have in place a supervisory system that is reasonably designed to ensure compliance with governmental laws, rules and regulations as well as its own internal guidelines."  (Mot. 11.)  NASD Rule 3010, included in the FINRA Manual, requires that CISC, as a member, "establish and maintain a system to supervise the activities of each registered representative, registered principal and other associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable NASD Rules."  NASD Rule 3010.  However, "FINRA does not specify how such supervision must be carried out."  *Taylor v. Waddell & Reed Inc.,* No. CV 09-02909 DMS, 2010 WL 3212136, at *3 (S.D. Cal. Aug. 12, 2010).  Further, where a statute or standard does not specify what level of supervision is required, it cannot as a matter of law prevent certain employees from satisfying administrative exemption's requirement that the employees' work be subject only to general supervision.  *See Brady,* 2012 WL 1059694, at *7 (citing *Campbell v. PricewaterhouseCoopers, LLP,* 642 F.3d 820, 831-32 (9th Cir. 2011)).

Pursuant to NASD Rule 3010, CISC must develop a supervisory structure and ensure that it:   establishes and maintains proper written procedures, designates persons with supervisory responsibilities over its representatives, and conducts general inspections.   NASD Rule 3010(a)-(c).

Although NASD Rule 3010 specifies that the CISC's supervisory procedures should be "reasonably designed to achieve compliance" by its employees, it does not mandate a particular level of supervision over representatives like the Class members. *See* NASD Rule 3010. Further, CISC maintains that the Rules promulgated by FINRA demonstrate the independence of and personal judgment exercised by the Advisors because the rules require that Advisors use "reasonable diligence" to determine whether a transaction or investment strategy suits their clients' individual profile. (Opp'n 8.) Indeed, Advisors are required to account for numerous financial and demographic criteria in making their recommendations to clients.  *See* NASD Rule 2111 (stating that an Advisor must have a "reasonable basis" for recommending a transaction or investment strategy, and must consider, among other things, the client's age, financial situation, tax status, investment objectives, and risk tolerance).  The existence of a supervisory scheme required by FINRA does not necessarily establish that the Class members were subject to a uniform level of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-09178 SJO (JCx)</u>          **DATE:** <u>October 6, 2014</u>

supervision greater than "general supervision" for the purposes of the administrative exemption. *See, e.g., Brady,* 2012 WL 1059694, at *7-8.

Plaintiffs also allege that CISC's "supervisory structure and controls," derived from its various supervisory policy manuals ("supervisory manuals"), "mandate that all [Class members] perform under more than general supervision." (Mot. 14.) CISC's supervisory manuals set uniform standards for the supervision of persons with securities licenses, including the Class members, and are designed to assist supervisory personnel in ensuring compliance with the applicable securities rules and regulations. (Willard Decl. Ex. CC 1, ECF No. 149.) As stated in the supervisory manuals, supervisors' duties generally include: reviewing Advisors' accounts, transactions, sales literature, and client files; ensuring that the Advisors make required disclosures, properly supply information, and properly complete documents; pre-approving investment tools and wire transfers; and ensuring that Advisors only sell approved products and keep proper records. (*See generally* Willard Decl. Exs. B, CC.) Supervisors also assure that Advisors comply with CISC's policies for completing transactions, processing orders and interacting with different types of clients. (*See generally* Willard Decl. Exs. B, CC.) Finally, supervisors monitor Advisors in order to prevent money laundering and other prohibited practices. (*See generally* Willard Decl. Exs. B, CC.) Advisors receive a separate manual ("representative manuals"), published periodically, that provides guidance regarding CISC's policies and procedures. (*See generally* Willard Decl. Ex. NN.)

Plaintiffs argue that the "amount of monitoring and supervision" by CISC demonstrates it will not be able to establish that the Class members were subject to "only general supervision" per the administrative exemption. (Mot. 14.) CISC maintains that its policies and procedures are designed to assure compliance with various securities laws in the highly regulated securities industry. (Opp'n 7-8.) Further, CISC alleges that its supervisory manuals and representative manuals (together, the "manuals") "empower [Advisors] to act **independently** and use their judgment with each client to make proper, tailored investment recommendations based on each client's unique financial circumstances and objectives." (Mot. 8) (emphasis in original). As with the NASD rules, the CISC manuals do not establish that the Class members are subject to a common or uniform level of supervision as opposed to "varying degrees of supervision." *See Brady,* 2012 WL 1059694, at *7. Instead, such a showing also requires consideration of the actual work performed by the Class members. *See Rosenberg,* 2013 WL 3205426, at *8.

The declarations of current CISC Advisors reflect highly variant levels of supervision. One Advisor describes his position as "very entrepreneurial" and maintained that his supervisor is "not involved in [his] day-to-day activities." (CE Ex. 16, Decl. of Jerrad Forman ("Forman Decl.") ¶¶ 17, 19, ECF No. 132-4.) Another Advisor maintains that his supervisors "give [him] complete discretion to handle [his] work in the way [he] determine[s] best" and that he uses "[his] own format" for asking questions and obtaining information from clients. (CE Ex. 17, Statement of Jeffrey Gordon ("Gordon Statement") ¶¶ 4-5, 9.) Although client transactions are reviewed by supervisors and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 11-09178 SJO (JCx)**          **DATE:  October 6, 2014**

must comply with applicable securities laws and regulations, including the FINRA rules, several Advisors testify that they do not need approval from supervisors prior to meeting with or making recommendations to clients.  (Forman Decl. ¶ 19; Gordon Statement ¶ 2; CE Ex. 19, Statement of Charlie Kim ("Kim Statement") ¶¶ 10, 14; CE Ex. 18, Statement of Ramzy Iskander ("Iskander Statement") ¶ 7; CE Ex. 20, Statement of Jason M. Lewis ("Lewis Statement") ¶¶ 5-7; CE Ex. 21, Statement of Kanan Mehren ("Mehren Statement") ¶ 10; CE Ex. 23, Statement of Jonathan Spielvogel ("Spielvogel Statement") ¶ 7.)  In terms of interactions with supervisors, some Advisors meet with their supervisors monthly (Mehren Statement ¶ 6), while others have meetings a few times per month (Gordon Statement ¶ 9; Spielvogel Statement ¶ 7.)  With other supervisors, the Advisors are required to make daily calls.  (CE Ex. 22, Statement of Kirk Miller ("Miller Statement") ¶ 9.)

The Advisors' experiences vary greatly from each other and are in stark contrast to the experiences of Alakozai and Pitts.  Alakozai maintained that both his supervisor and CISC's compliance personnel were highly involved in his daily activities, instructing him as to how many calls to make and what products to sell.  (CE Ex. 1, Dep. of Michael Alakozai ("Alakozai Dep.") 202-03, 207, ECF No. 131-1.)  Although Alakozai's supervisor did not attend his client meetings (Alakozai Dep. 207), they had  daily phone meetings and weekly in-person meetings.  (Alakozai Dep. 211.)  Pitts saw one of his supervisors in-person  approximately once every two weeks and spoke to him on the phone daily.  (CE Ex. 2, Dep. of Steven Pitts ("Pitts Dep.") 121.)  In terms of client interactions, Pitts  testified that all of his meetings were scripted according to the product being sold and that he never deviated from the sales materials provided by CISC.  (Pitts Dep. 163-64, 235.)  Overall, the record shows great disparity in the level of supervision exercised over the individual Advisors.

        ii.     <u>Work Directly Related to CISC's Management Policies or General Business</u>

To be exempt under the administrative exemption, the Class members must "[perform] office or non-manual work directly related to management policies or general business operations of [their] employer or [their] employer's customers."  Cal. Code Regs. tit. 8, § 11040.1(A)(2)(a)(I).   "The phrase 'directly related to management policies or general business operations of his employer or his employer's customers' describes those types of activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work."[3]  29 C.F.R. § 541.205(b).  Although an employee who performs sales work for a

_____

   [3]  For the purposes of the administrative exemption, "[t]he activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the [FLSA] **effective on the date of the [Wage Order]**: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215." Cal. Code Regs. tit. 8, § 11040.1(A)(2)(f) (emphasis added).  As of the effective date of the Wage

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 11-09178 SJO (JCx)**          **DATE:  October 6, 2014**

retail establishment is not exempt under the administrative exemption, administrative operations do include "promoting sales."[4]  29 C.F.R. § 541.205(b).  Further, some examples of employees whose duties are directly related to management policies include "advisory specialists and consultants . . . credit managers, safety directors, claim agents and adjusters, wage-rate analysts, tax experts, account executives of advertising agencies, **customers' brokers in stock exchange firms**, promotion men, and many others."  29 C.F.R. § 541.205(c)(5) (emphasis added).  What the listed employees have in common is that "each . . . likely has the power to make decisions affecting the company's business, policies and customers."  *Rieve,* 870 F. Supp. 2d at 874.

With regard to stock brokers specifically, the Ninth Circuit has stated "[t]o  the extent that these employees primarily serve as general financial advisors or as consultants on the proper way to conduct a business, *e.g.,* advising businesses how to increase financial productivity or reduce insured risks, these employees properly would qualify for exemption."  *Bratt v. Cnty. of L.A.,* 912 F.2d 1066, 1070 (9th Cir. 1990).  The parties dispute whether CISC services businesses or individuals.  (*See* Mot. 15-16; Opp'n 11-12.)  Plaintiffs argue that "[Class members do] not engage in work directly related to management policies or general operations of [CISC's] customers because the vast majority of the customers were individuals, not businesses." (Mot. 15.)  There is evidence, however, that many Advisors service business clients.[5]  (*See* Kim Statement ¶ 8; Miller Statement ¶ 6; Spielvogel Statement ¶ 3.)

///

iii.    Sales as a Primary Duty

Plaintiffs contend that the administrative exemption is not applicable to the Class members because their "primary duty is selling financial products."  (Mot. 16.)  The applicable regulations provide that:

---

Order, the regulation for determining whether an employee performs work directly related to management policies or general business operations was 29 C.F.R. § 541.205(b) (1998).  *See D'Este v. Bayer Corp.,* 565 F.3d 1119, 1125 (9th Cir. 2009).

[4]  The parties do not cite, and the Court has not found, a California case elucidating the standards for determining whether an employee is "promoting sales."  *See D'Este,* 565 F.3d at 1125 ("No California court has addressed this issue.").

[5]  Both Alakozai and Pitts stated in their declarations that they "primarily served businesses rather than individuals" during the time they were employed by CISC.  (Alakozai Decl. ¶ 3; Pitts Decl. ¶ 3).  However, Pitts maintains that his declaration "contained a typographical error" and that he primarily serviced individuals.  (Reply Ex. 3 2, ECF No. 135-3.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-09178 SJO (JCx)</u>          **DATE:** <u>October 6, 2014</u>

Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

29 C.F.R. § 541.203(b). Determining exempt status under California law requires a "detailed, fact-specific determination." *Perry v. U.S. Bank,* No. CV 00-01799 PJH, 2001 WL 34920473, at *7 (N.D. Cal. Oct. 16, 2001). This is because job duties, and therefore eligibility for exemption, may vary even among class members with the same job title. *See Heffelfinger v. Elec. Data Sys. Corp.,* 492 Fed. Appx. 710, 714 (9th Cir. 2012).

Plaintiffs maintain that their primary duty as Advisors was selling CISC's products. (*See* Alakozai Dep. 217; Pitts Dep. 243.) Alakozai also testified that CISC did not allow him to discuss the advantages and disadvantages of potential investments with clients. (Alakozai Dep. 260.) Other Advisors' job duties vary considerably from Plaintiffs'. Some Advisors spend approximately half of their time meeting clients and providing financial advice (Forman Decl. ¶ 14), while others spend at least 60% of the workday developing relationships with clients and researching investment strategies based on client needs. (Gordon Statement ¶ 8; Kim Statement ¶¶ 7, 9.) Rather than focusing on exclusively selling products, Advisors often spent significant portions of time researching and gathering information, engaging in conversations to better assess the client's needs, and discussing the advantages and disadvantages of certain financial products with clients. (Forman Decl. ¶¶ 9, 12; Gordon Statement ¶¶ 4-7; Kim Statement ¶¶ 7-8, 10-11; Lewis Statement ¶¶ 5, 7-8, 10; Mehren Statement ¶ 3; Miller Statement ¶ 7, 12; Spielvogel Statement ¶ 6; Wallace Statement ¶¶ 6-7; CE Ex. 27, Statement of Scott Cain ("Cain Statement") ¶¶ 7-8; CE Ex. 28, Statement of Triet Huynh ("Huynh Statement") ¶¶ 3-4.)

///
///
///

iv.   <u>Administrative Exemption Analysis</u>

The applicability of the administrative exemption depends on "[t]he work actually performed by the employee during the course of the workweek . . . the amount of time the employee spends on such work . . . [and] the employer's realistic expectations and the realistic requirements of the job." Cal. Code Regs. tit. 8, § 11040.1(A)(2)(f). While CISC's manuals, policies, and procedures may convey its expectations as an employer and the requirements it imposed on its Advisors, these

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** __CV 11-09178 SJO (JCx)__          **DATE:** __October 6, 2014__

materials do not stand alone.  Instead, they must be considered in tandem with the "actual work performed by the employees." *Aburto v. Verizon Cal., Inc.,* No. CV 11-03683 ODW, 2012 WL 10381, at *4 (C.D. Cal. Jan 3, 2012).  Determining whether CISC misclassified its Advisors as exempt is an "individualized inquiry involving facts unique to each potential plaintiff." *Id.* at *4 (citing *Marlo,* 639 F.3d at 948).

Whether there is sufficient commonality for determining the applicability of the administrative exemption on a class-wide basis is a close determination.  First, despite the uniform securities laws and CISC compliance policies to which all Advisors were subject, the evidence shows significant variation in terms of the level of supervision to which individual Advisors are subject in their day-to-day duties, including how often the Advisors met with their supervisors and the extent to which they needed their supervisors' approval prior to recommending products to clients.  Second, the record shows that several Advisors served businesses, not just individual clients.  Plaintiffs argue that CISC's inability to produce evidence that any Advisor primarily serviced businesses rather than individuals should end the inquiry. (*See* Reply 4.)  Determining whether the Advisors primarily service businesses or individuals, however, requires review of each Advisors' client and account lists, as well as individualized inquiries as to the amount of time the Advisor devotes to business clients.  Third, the record reveals significant variation among the Advisors with regard to their primary duties:  while some focused exclusively on selling CISC's products, others devoted significant amounts of time to researching products, assessing clients' financial goals, and developing client relationships.

The administrative exemption includes several criteria, including the requirements that the employee perform work directly related to the management policies or general business operations of the employer or its customers and perform specialized work under only general supervision.  The record shows significant variation in terms of whom the Advisors serviced, the level of supervision to which they were subject, and how the Advisors performed their duties and managed their tasks.  Based on all the evidence, determining whether a particular Advisor was misclassified as exempt under the administrative exemption would require an individualized inquiry as to his day-to-day activities.  The Court finds insufficient commonality as to the applicability of the administrative exemption.

        **b.**    California's Commissioned Salesperson Exemption[6]

---

[6]  Plaintiffs argue that CISC is estopped from "asserting either the California or federal salesperson exemptions" because it "admitted that the duties of **all** [Advisors] satisfy the California administrative exemption and **no** [Advisor] is primarily engaged in sales." (Reply 5) (emphasis in original).  This argument is meritless.  Rule 8 of the Federal Rules of Civil Procedure provides that "[a] party may set out [two] or more statements of a claim or defense **alternatively or hypothetically** . . .  A party may state as many separate claims or defenses as it has **regardless of consistency**." Fed. R. Civ. P. 8(d)(2)-(3) (emphasis

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-09178 SJO (JCx)</u>          **DATE:** <u>October 6, 2014</u>

Pursuant to California's commissioned salesperson exemption ("California salesperson exemption"), the Wage Order's overtime provisions do not apply to "any employee whose earnings exceed one and one-half [] times the minimum wage if more than half of that employee's compensation represents commissions." Cal. Code Regs. tit. 8, § 11040.3(D). Commission wages are defined as "compensation paid to any person for services rendered in the sale of such employer's property or services and based proportionately upon the amount or value thereof." Cal. Lab. Code § 204.1.[7] The California salesperson exemption applies only to those employees who are "principally [engaged] in selling a product or service." *See Ramirez,* 85 Cal. 4th at 804 (citation omitted).

Plaintiffs argue that the "applicability of the California commissioned salesperson exemption can be decided based on the common question of whether [the Class members] are primarily engaged in selling." (Mot. 2.) In determining whether there are common issues with regard to the applicability of the California salesperson exemption, courts consider evidence showing employees share common job duties or that the employer uses a uniform training program to govern the employee's day-to-day duties. *See Maddock v. KB Homes, Inc.,* 248 F.R.D. 229, 243 (C.D. Cal. 2007). The courts also consider whether there is "variance in employee duties, and time spent on such duties." *Id.*

Plaintiffs testified that they were primarily engaged in sales. (*See* Alakozai Dep. 217; Pitts Dep. 243.) They do not define "sales" in the context of their positions as Advisors or differentiate their other duties from their sales duties. Several Advisors stated that they spend at least half of their time meeting with clients, marketing, or providing financial advice. (*See* Forman Decl. ¶ 14 (50%); Iskander Statement ¶ 14 (50%); Mehren Decl. ¶ 7 (80-90%); Spielvogel Decl. ¶ 5 (70%); Wallace Decl. ¶ 10 (60-80%); Huynh Decl. ¶ 5 (50%).) Other Advisors devoted significant time to researching or planning client meetings. (*See* Forman Decl. ¶ 14 (30% planning and preparing for client meetings, 10% researching); Gordon Decl. ¶ 8 (60% marketing, researching, and communicating with clients); Kim Decl. ¶¶ 7, 9 (33% meeting with clients and developing relationships, 33% analyzing client information, 33% advising clients.) It is not immediately clear,

---

added). The Ninth Circuit has held that "'[i]n light of the liberal pleading policy embodied in [the rule] . . . a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case.'" *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir.1990) (quoting *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir.1985)). Plaintiffs allege that they are owed overtime and other penalties as non-exempt employees. The applicability of one of the state or federal exemptions, each of which has different criteria, are defenses CISC may plead in the alternative.

[7] Although Labor Code Section 204.1 specifically applies to the employees of vehicle dealers, the Supreme Court of California held that this definition is applicable to the Wage Order. *See Ramirez,* 20 Cal. 4th at 803.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.: CV 11-09178 SJO (JCx)**          **DATE: October 6, 2014**

based on the Advisors' statements, or Plaintiffs' Motion, which of these duties constituted "sales." It is clear, however, that duties varied widely from Advisor to Advisor.

As with the administrative exemption, ascertaining whether the California salesperson exemption applies to the Class members requires individualized determinations as to each Advisor's day-to-day job activities. Further, as with the administrative exemption, the record shows disparities in terms of the Advisors' duties and the amount of time they devoted to each. The Court finds insufficient commonality as to the applicability of the California salesperson exemption.

c.    The Federal Commissioned Salesperson Exemption

The federal commissioned salesperson exemption ("federal salesperson exemption") provides that an employer does not violate the federal overtime laws where it employs:

> [A]ny employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate . . . and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). The Department of Labor's ("DOL") interpretative regulations provide that an employer's business qualifies as a retail or services establishment, if: "(a) [it engages] in the making of goods or services; and (b) 75 percent of its sales of goods or services, or of both, [are] recognized as retail in the particular industry; and (c) not over 25 percent of its sales of goods or services, or of both, [are] sales for resale."[8]  29 C.F.R. § 779.313. The term retail or service establishment is to be narrowly construed and "does not encompass establishments in industries lacking a 'retail concept'." 29 C.F.R. § 779.316. For clarification, the regulations include a partial list of establishments which lack a "retail concept."[9]  29 C.F.R. § 779.317. This list includes stock or commodity brokers. 29 C.F.R. § 779.317.

---

[8]  The DOL's official interpretations of the FLSA are persuasive authority, but are not binding on the courts. *See* 29 C.F.R. §§ 779.7-779.8; *see also Martin v. Refrigeration Sch., Inc.,* 968 F.2d 3, 6-8 (9th Cir. 1992); *Barnett v. Wash. Mut. Bank, FA*, No. CV 03-00753 CRB, 2004 WL 1753400, at *3 (N.D. Cal. Aug. 5, 2004) ("The 'retail or service establishment' regulations are merely interpretative guidelines and were not subject to notice and an opportunity for comment; thus, the guidelines have only the power to persuade.").

[9]  The Ninth Circuit has explicitly expressed approval of the DOL's partial list of non-retail establishments.  *See Martin,* 968 F.2d at 8.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 11-09178 SJO (JCx)          **DATE:**  October 6, 2014

Plaintiffs argue that "the applicability of the [federal salesperson exemption] can be decided on the common question of whether Defendant is a 'retail or service establishment'" under the applicable federal regulations. (Mot. 2; *see also* Reply 4.)  CISC asserts that the federal salesperson exemption may be applicable to some of its Advisors because their wages exceed one and a half times the minimum wage and more than half of this compensation is commissions, but does not address whether it has a retail concept under the DOL regulations.  (Opp'n 14.)  As stated above, the federal salesperson exemption only applies to retail or services establishments, defined by the DOL as businesses with a retail concept.  Whether CISC is a retail or service establishment, and consequently, whether the federal salesperson exemption may be applied to **any** of its Advisors, regardless of their commission pay, is a common question likely to generate a common answer. *See Dukes,* 131 S. Ct. at 2551.  The Court finds sufficient commonality as to the applicability of the federal salesperson exemption.

d.    The Highly Compensated Employee Exemption

CISC also argues that the Advisors are exempt under the federal highly compensated employee exemption ("highly compensated exemption").  (Opp'n 12.)  The highly compensated exemption provides that "[a]n employee with total annual compensation of at least $100,000 is deemed exempt . . . if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee."  29 C.F.R. § 541.601(a).  The highly compensated exemption only requires that the employee "perform one of the exempt duties of an administrative employee."  *Mamola v. Grp. Mfg. Servs., Inc.,* No. CV 08-01687, 2010 WL 1433491, at *11 (D. Ariz. Apr. 9, 2010).

Plaintiffs argue that FLSA's highly compensated exemption "applies to federal law only and . . . California employees are entitled to the exemption, state or federal, that is most protective." (Reply 4-5.)  Plaintiffs cite *Aguilar v. Ass'n for Retarded Citizens,* 234 Cal. App. 3d 21 (1991), for this proposition.  (Mot. 4-5.)  In *Aguilar,* plaintiffs were employed by a non-profit organization that operated group homes for mentally handicapped persons and brought suit against their employer to recover wages for hours they were permitted to sleep during their 17-hour shifts.  *Id.* at 24.  In holding that plaintiffs were entitled to compensation for hours worked, including the hours they were asleep, the court determined that the DOL's interpretation of compensation for sleep time did not control, in part because it was not "more beneficial to employees than the state law."  *Id.* at 34.

*Aguilar* is inapposite.  First, exemptions, by their nature, are not beneficial to or protective of employees.  Rather, under both state and federal law, where an exemption applies, the employer is not required to pay overtime for hours worked in excess of the weekly or daily maximums.  *See Greko,* 277 F.R.D. at 422 (California); *Cleveland,* 420 F.3d at 983 (FLSA).  Employers bear the burden of proving the application of an exemption to its employees precisely because exemptions remove employees from the protections otherwise available under the labor laws.  *See Greko,* 277

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 11-09178 SJO (JCx)</u>          **DATE:**  <u>October 6, 2014</u>

F.R.D. at 423 (citing *Ramirez*, 20 Cal. 4th at 794-95) (California); *Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir.1983) (FLSA).  Second, in the operative complaint, Plaintiffs assert causes of action for restitution of overtime wages under both federal and state law.  (*See* TAC ¶¶ 30-32, 34-36.)  While California's exemptions apply to Plaintiffs' restitution claims under California law, the federal exemptions apply to Plaintiffs' claims under the FLSA.

      3.   <u>Typicality</u>

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Typicality tests whether putative class members "have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon*, 976 F.2d 497 at 508 (citation omitted).  Class certification should not be granted "if there is a danger that absent class members will suffer if their representative[s] [are] preoccupied with defenses unique to [them]."  *Id.* (citation omitted) (internal quotation marks omitted).

Plaintiffs argue that they have the same interest and suffered the same injury as the Class members because they were all "misclassified as exempt from overtime and other labor laws . . . not provided with itemized wage statements . . . not timely paid . . . [and] not provided with proper meal breaks."  (Mot. 9.)  Plaintiffs also allege that CISC's conduct has been the same towards all of the Class members and that Plaintiffs' claims are co-extensive with those of the Class members.  (Mot. 9.)

CISC argues that Plaintiffs' testimony regarding their job duties indicates that Plaintiffs' day-to-day duties were too different from those of other Advisors for Plaintiffs to be typical of the Class.  (Opp'n 18.)  CISC also asserts that "Plaintiffs fail to meet the typicality requirement for this reason alone."  (Opp'n 18.)  This argument is unavailing.  Even if Plaintiffs' job duties were not identical to those of Advisors from whom CISC solicited declarations, *see supra* Parts II.A.2.a.i-iii, II.A.2.b, under Rule 23's permissive standards, this does not preclude a finding that Plaintiffs claims are co-extensive with the claims of the hundreds of Advisors included in the proposed Class.  *See Hanlon,* 150 F.3d at 1020.

CISC's second argument persuades.  CISC maintains that Plaintiffs' claims are atypical because, due to Plaintiffs' respective bankruptcy filings, they are subject to a unique defense.  (Opp'n 17.)  In the Ninth Circuit, when an individual files bankruptcy, all causes of action that accrued before the filing "generally become the property of the bankruptcy estate."  *Cloud v. Northrop Grumman*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-09178 SJO (JCx)</u>          **DATE:** <u>October 6, 2014</u>

*Corp.,* 67 Cal. App. 4th 995, 1001 (1998) (citing *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707-09 (9th Cir. 1986). As a result, the individual lacks standing to bring an action based on the claim because the claim has become the property of the bankruptcy estate. *See, e.g., Cloud,* 67 Cal. 4th at 1002-03 (loss of earnings and personal injury claims); *Cupp v. Azzouni,* No. CV 14-01283 MMC, 2014 WL 1922186, at *3 (N.D. Cal. May 12, 2014) (§ 1983 claims).

Alakozai filed the instant action on July 15, 2011 (ECF No. 1) and Pitts joined the action on August 3, 2011. (ECF No. 8.) On April 27, 2012, Alakozai filed a bankruptcy petition with the United States Bankruptcy Court Northern District of California. (CE Ex. 41 1, ECF No. 135-3.) Alakozai's schedule of personal property, filed as part of his bankruptcy petition, listed a "[p]ossible settlement of class action lawsuit" as personal property worth $40,000. (CE Ex. 41 13.) The listed settlement involved a class action against another entity, however, and not the instant action against CISC. (*See* CE Ex. 1 91.) Pitts filed for bankruptcy with the United States Bankruptcy Court Central District of California on August 28, 2012. (CE Ex. 38 1, ECF No. 135-2.) Pitts did not list any contingent claims, including the instant action, on his bankruptcy petition. (CE Ex. 38 15.) His testimony suggests he did not disclose the instant action in his bankruptcy proceeding because he did not realize the suit was still being litigated. (*See* CE Ex. 2 41.)

As indicated above, class certification should not be granted if there is a risk that absent class members will be harmed because their class representatives are preoccupied by defenses that are unique to them. *Hanon,* 976 F.2d at 508. Because Plaintiffs' bankruptcy filings occurred after they filed the instant action, and were not disclosed in the bankruptcy proceedings, it is predictable that a major focus of the litigation will be on a defense unique to them. *See Hanon,* 976 F.2d at 509. Thus, the Court finds that the Plaintiffs have failed to satisfy Rule 23's typicality requirement.

Plaintiffs' failure to satisfy the typicality requirement requires the Court to deny the Motion. *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001) ("As the party seeking class certification, [plaintiffs] bear[] the burden of demonstrating that [they] ha[ve] met **each** of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).") (emphasis added). However, in order to fully address the merits of parties' pleadings in connection with this Motion, the Court continues with its analysis of the Rule 23 requirements.

          4.     <u>Adequacy of Representation</u>

The representative parties in a class action must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). An examination of adequate representation generally consists of two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the representative plaintiffs and their counsel

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-09178 SJO (JCx)</u>          **DATE:** <u>October 6, 2014</u>

prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020 (9th Cir. 1998)).

Plaintiffs contend that they "have and intend to continue to prosecute [the instant] action vigorously." (Mot. 9; *see also* Alakozai Decl. ¶ 6; Pitts Decl. ¶ 6.)  Plaintiffs also maintain that they are "represented by qualified counsel" with "substantial experience in class actions and employment litigation." (Mot. 10; *see generally* Decl. of Jeffrey K. Compton in Supp. of Pls.' Mot. for Class Certification, ECF No. 117-3; Decl. of Edward J. Wynne in Supp. of Pls.' Mot. for Class Certification, ECF No. 117-4.)  Finally, Plaintiffs state that they "are not aware of any conflict of interest with any class member." (Mot. 10.)

CISC attacks Plaintiffs' adequacy as class representatives on the following grounds. (Opp'n 17-18.)  First, Plaintiffs' bankruptcy proceedings render them susceptible to the defense that they lack standing to bring the instant action. (Opp'n 17.)  Second, Plaintiffs are subject to different arbitration agreements than those of other Advisors and some Advisors are subject to arbitration agreements "containing an express class action waiver that courts have consistently enforced." (Opp'n 18.)  Third, CISC attacks Plaintiffs' credibility, contending that they "verified false or incomplete interrogatory responses about their work hours, bankruptcies, [and] prior litigation history." (Opp'n 18.)

In some circumstances, a class representative's lack of credibility may weigh against a finding of typicality or adequacy. *See, e.g. Drake v. Morgan Stanley & Co.,* No. CV 09-06467 ODW, 2010 WL 2175819, at * 5 (C.D. Cal. Apr. 30, 2010).  Here, CISC alleges that Plaintiffs lack credibility due to inconsistencies between their declarations and deposition testimony. (Opp'n 18.)  CISC also attacks Alakozai's credibility, alleging that he "was statutorily disqualified from securities licensing because he did not disclose that New York state revoked his insurance license for 'untrustworthy' behavior, and [he] admitted to lying in federal court to increase his chances of recovering against a prior employer." (Opp'n 19.)

The Court finds that the inconsistencies between Plaintiffs' declarations and their deposition testimony regarding their bankruptcies and work schedules do not demonstrate that they lack the credibility necessary to represent the Class. (*Compare* CE Ex. 1 33-34, 166, 170-73, 297-98 *with* CE Ex. 6 ¶¶ 6, 15, 17 (Alakozai); *and* CE Ex. 2 177-181 *with* CE Ex. 7 ¶ 7 (Pitts).)  Further, CISC mischaracterizes Alakozai's deposition testimony pertaining to his suit for long-term disability benefits against his former employer. Alakozai testified that he did not have obsessive compulsive disorder and that the disorder should not have been part of his diagnosis for the purposes of disability suit; there is no indication in the record that he and his physician purposefully misled the employer or the court as to his condition. (CE Ex. 1 41-44.)  By contrast, Alakozai's statutory disqualification for failure to disclose the revocation of his license in New York, and the nature of the license revocation raises concern about his credibility, and consequently, his adequacy as a Class representative.  (*See* CE 11 10, 16; CE Exs. 13-14.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 11-09178 SJO (JCx)**          **DATE:**  **October 6, 2014**

Plaintiffs' respective bankruptcy filings also call into question their ability to fairly and adequately represent the interests of the class.  Party representatives cannot fairly and adequately protect the interests of the class where they "lack[] standing to pursue the claims [they seek] to assert on behalf of the class."  *Rader v. Teva Parenteral Meds., Inc.,* 276 F.R.D. 524, 529 (D. Nev. 2011) (plaintiff's claims were part of his bankruptcy estate); *see also Rosenberg,* 2013 WL 3205426, at *11 (plaintiff failed to meet Rule 23's adequacy requirement where the court could not discern "whether [the plaintiff] or the bankruptcy trustee, as the real party in interest, ha[d] any conflict of interest in the present action . . . [or] adequately represent[ed] the class").  Due to their failure to disclose the instant action in their respective bankruptcy filings, it is unclear whether Plaintiffs may bring the instant claims in their own right, let alone on behalf of the class.

The Court finds that Plaintiffs have failed to meet Rule 23's adequacy requirement.[10]

///
///
      **B.**    <u>Rule 23(b)(3) Requirements</u>

Plaintiffs argue for certification pursuant to the third subdivision of Rule 23(b).  (Mot. 10.)  "Under Rule 23(b)(3), a class may be certified if the district court 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 944 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(b)(3)).  Courts commonly refer to the two elements under Rule 23(b)(3) as the "predominance" and "superiority" requirements.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  To be certified, the Class must satisfy both.  *Id.*

        **1.**    <u>Predominance</u>

Predominance requires "that the questions of law or fact common to all members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Although analogous to the commonality inquiry under Rule 23(a)(2), the predominance inquiry is more rigorous.  *See Hanlon,*

---

   [10]  In the Reply, Plaintiffs state that "[t]o the extent the Court finds that either of the Plaintiffs is not an adequate representative, Plaintiffs request leave to add a new representative plaintiff."  (Reply 6.)  As explained in this Order, Plaintiffs' Motion suffers defects under Rule 23 apart from failure to show adequacy of representation.  Overall, Plaintiffs have failed to carry their burden of demonstrating that they have satisfied Rule 23 with regard to several of the Rule's requirements.  *See Zinser,* 253 F.3d at 1186.  For this reason, Plaintiffs' request to add a new class representative is denied.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 11-09178 SJO (JCx)**      **DATE:   October 6, 2014**

150 F.3d at 1019.  The "main concern . . . [is] the balance between individual and common issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.  By contrast, when "claims require a fact-intensive, individual analysis," then class certification will "burden the court" and is inappropriate.  *See Vinole*, 571 F.3d at 947.  One of the underlying priorities of the predominance test is accomplishing judicial economy.  *See Zinser*, 253 F.3d at 1189 (quoting *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996)).

a.   Wage Order Violations

CISC advances two exemptions as defenses to Plaintiffs' claims for restitution of overtime wages under the Wage Order: (1) the administrative exemption and (2) the California salesperson exemption.  (Opp'n 5-14.)[11]  For each exemption, Plaintiffs argue that whether the class members were misclassified can be decided on a classwide basis.  (*See* Mot. 11, 17-18.) (administrative exemption), 17-18 (California salesperson exemption).)

Plaintiffs acknowledge that determining the applicability of the administrative exemption to the Class members requires examining:  (1) whether the Advisors performed specialized work or special assignments and tasks under only general supervision and (2) whether the Advisors' duties qualified for the exemption.  (Mot. 11.)  Further, the record reflects that despite CISC's use of uniform policies and procedures, its Advisors were subject to varying levels of supervision and performed different job duties from day-to-day.  *See supra* Parts II.A.2.a.i, iii.  As a result, if the Class were certified, determining whether a particular Class member was improperly classified under the administrative exemption would result in hundreds of "mini-trials" as to each Advisors' level of supervision and individual job duties.  *See Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516, 536 (C.D. Cal. 2011).  Such fact-intensive, individual analysis would burden the Court. *See Vinole*, 571 F.3d at 947.

---

[11]  CISC also implies that the Advisors may be exempt from the Wage Order's overtime provisions under California's professional exemption.  (Opp'n 14-15.)  CISC's only contentions regarding the applicability of the professional exemption to the Class is that individualized inquiries would predominate regarding whether each Advisors' education and experience influenced his job duties or the amount of time he spent performing them. (Opp'n 15.)  This cursory analysis, which omits any discussion of the exemption's several elements or their applicability to the Advisors, *see* Cal. Code Regs. tit. 8, § 11040.1(A)(3), ignores the fact that CISC bears the burden of showing that the professional exemption applies.  *See Greko*, 277 F.R.D. at 423.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 11-09178 SJO (JCx)          DATE:  October 6, 2014**

The record also shows that determining the applicability of the California salesperson exemption is similarly impervious to classwide determination.  This exemption has two prerequisites:  first, the employee must be principally involved in selling a product or service; second, the employee must be paid on a commission basis.  *Ramirez,* 20 Cal. 4th at 804.  As explained above, *see supra* Part II.A.2.b, determining the applicability of the California salesperson exemption necessitates individualized inquiries as to each Advisors' primary duties and whether these duties constituted sales or administrative functions.  An inquiry that may require each Class member to testify as to the nature and frequency of his job duties, however, is not conducive to achieving judicial economy.  *See Zinser*, 253 F.3d at 1189.

      b.    <u>FLSA Violations</u>

As defenses to Plaintiff's restitution claims under the FLSA, CISC asserts the federal salesperson and highly compensated exemptions.[12]  (Opp'n 12, 14.)  Plaintiffs argue that the issue of whether the Class members were misclassified as exempt under the federal salesperson exemption can be decided on a classwide basis (*see* Mot. 16-17) but do not address whether the applicability of the highly compensated exemption is readily determinable as to all Class members.[13]  (*See generally* Mot.; Reply.)

As indicated, the question of whether the federal salesperson exemption may be applied to the Advisors is susceptible to common proof because CISC must have a "retail concept" in order for the exemption to apply to any of its Advisors.  Unlike the California exemptions discussed in the preceding subsection, determining whether CISC's business has a retail concept does not require individualized inquiries for each of the Class members.  This question, common to all of the Class members, is apt to yield a common answer.  *See Abdullah*, 731 F.3d at 957.

By contrast, determining the applicability of the highly compensated exemption requires individualized analysis and raises the same concerns as California's administrative and salesperson exemptions.  The highly compensated exemption applies only to those employees who perform office or non-manual work as well as:  "(1) have a 'total annual compensation of at least [$]100,000' . . . [and] (2) 'customarily and regularly perform[ ] any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee.'"  *Sarviss v.*

---

[12]  CISC's references to the learned professional and executive exemptions under FLSA suffer from the same defects as its alleged professional exemption under California law. *See supra* Part II.B.1.a, n.12.

[13]  Plaintiffs' sole argument regarding the applicability of the highly compensated exemption is that it cannot limit CISC's liability because it is less protective than some of the California exemptions.  (*See* Reply 5.)  The Court addresses this meritless argument above.  *See supra* Part II.A.2.e.

CASE NO.:  **CV 11-09178 SJO (JCx)**          DATE:  **October 6, 2014**

*Gen. Dynamics Info. Tech., Inc.,* 663 F. Supp. 2d 883, 892 (C.D. Cal. 2009) (internal citations omitted).  Plaintiffs allege that the Class members "receive on average $100,000 per year in total compensation" (TAC ¶ 10) but do not address the exemption's duties element.

"[W]hile the analysis of a highly compensated . . . employee's primary duties may be reduced or streamlined, the employer still must establish that the employee 'customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee.'" *Wood*, 2011 WL 1484117, at * 3 (quoting 29 C.F.R. § 541.601(c)). As discussed throughout this Order, the record shows that Advisors' duties vary considerably from individual to individual as well as from day to day.  Thus, the highly compensated exemption requires consideration of the same duties and responsibilities as the administrative exemption, and creates similar concerns about proliferating individualized inquiries.  Because each of the duties listed under the administrative exemption necessitates an individualized inquiry (*see* Cal. Code Regs. tit. 8, § 11040.1(A)(2)(b)-(e)), this problem persists even though the employee need only perform one administrative duty.  The pervasiveness individualized inquiries undermines one of the goals of class litigation:  maximizing judicial economy.  *See Haley*, 169 F.R.D. at 647.

///
///

                c.     Predominance Analysis

"The predominance inquiry focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole*, 571 F.3d at 944 (quoting *Hanlon*, 150 F.3d at 1022) (internal quotation marks omitted).  "[I]f an employer asserts an exemption as a defense and the inquiry into whether the individual class members qualify for that exemption is fact-intensive, the district court must weigh the complexity of that inquiry in the predominance calculus."  *In re Wells Fargo Mortg. Overtime Pay Litig.,* 268 F.R.D. 604, 611 (N.D. Cal. 2010).  Courts "must consider the full range of factors presented by the issues in [the] case when determining whether issues common to the class would predominate over individualized inquiries." *Id.* at 610.

Here, fact-specific inquiries regarding how Advisors perform their job duties and how much time they devote to any specific duty or responsibility predominate over questions susceptible to common proof.  These inquiries, by focusing on individual questions rather than those common to the class, create significant complexity, and hinder rather than promote judicial economy.  Although the applicability of the federal salesperson exemption, one of several exemptions asserted by CISC, can be determined on classwide basis, this does not negate the individualized inquiries necessitated by the other exemptions.  For these reasons, class certification will burden the Court.  *See Vinole*, 571 F.3d at 947.

CISC argues that Plaintiffs' claims for damages also create predominance problems.  It cites the United States Supreme Court's recent decision in *Comcast Corp. v. Behrend* for the proposition

**CASE NO.:** <u>CV 11-09178 SJO (JCx)</u>          **DATE:** <u>October 6, 2014</u>

that Plaintiffs must "demonstrate that **damages** may be established on a class-wide basis." (Opp'n 19) (emphasis in original). This assertion mischaracterizes the holding in *Comcast* and misstates Plaintiffs' obligations at the class certification stage.[14]

In *Comcast,* a class of television subscribers brought suit against Comcast Corporation alleging that its strategy of concentrating operations within a particular region violated the federal antitrust statutes. *Comcast Corp. v. Behrend,* __ U.S. __, 133 S. Ct. 1426, 1430 (2013). There, the plaintiffs based their damages calculation exclusively on one expert's damages model even though the model did not calculate damages according to the sole theory of antitrust impact for which the district court certified class. *Id.* at 1431. The Supreme Court concluded that, absent the presentation of another model for calculating damages, the plaintiffs could not show Rule 23 predominance because "[q]uestions of individual damage calculations [would] inevitably overwhelm questions common to the class." *Id.* at 1433. The plaintiffs' proposed proof of damages was defective because the damages model did not tie the theory of liability for which class was certified to the damage calculation. *Id.* at 1433-35.

Reflecting on the Supreme Court's holding in *Comcast,* the Ninth Circuit held that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013); *see also Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). Instead, Plaintiffs bear the burden of showing "that their damages stemmed from the defendant's actions that created the legal liability." *Leyva,* 716 F.3d at 514 (citing *Comcast,* 133 S. Ct. at 1435). Thus, "if [Plaintiffs] prove [CISC's] liability, damages will be calculated based on the wages each employee lost due to [CISC's] unlawful practices. *Id.* Here, Plaintiffs allege that CISC misclassified the Class members as exempt from state and federal overtime laws and seek restitution for overtime wages. If the Court were to certify the proposed Class and Plaintiffs proved at trial that CISC misclassified the Class members, damages could be calculated according to each Class member's lost wages as a result of this misclassification. *See id.*

CISC's second argument regarding Plaintiffs' damages is more persuasive: CISC maintains that Plaintiffs' failure to offer a reliable method for calculating damages creates predominance issues "because the [Advisors] did not record their time and the evidence shows [that] hours varied

---

[14] Several courts in the Ninth Circuit have held that "*Comcast* does not act as a bar to class actions where the plaintiffs proved a **workable** damages model." *See Giles v. St. Charles Health Sys., Inc.,* 294 F.R.D. 585, 595 (D. Or. 2013) (emphasis added) (listing cases); *see also Munoz v. PHH Corp.,* No. CV 08-00759 AWI, 2013 WL 2146925, at *24 (E.D. Cal. May 15, 2013) ("The *Comcast* decision does not infringe on the long-standing principle that individual class member damage calculations are permissible in a certified class under Rule 23(b)(3)").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 11-09178 SJO (JCx)</u> | **DATE:** <u>October 6, 2014</u> |

greatly." (Opp'n 19.) Indeed, the existence of timekeeping methods alleviates concerns about the complexities of making individualized damages calculations. *See, e.g., Leyva*, 716 F.3d at 514 (damages calculable based on defendant's computerized payroll and time-keeping database); *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 491 (E.D. Cal. 2006) ("[T]he damages of each class member can be easily determined with reference to timecards"). Further, the record reveals that the number of work hours per week varied from Advisor to Advisor. (*See* CE Ex. 6 7 (60-65 hours); CE, Ex. 7 6 (50-55 hours); Iskander Decl. ¶ 15 (35 hours); Mehren Decl. ¶ 11 (40 hours)). Plaintiffs offer no methodology for calculating the Advisors' hours for a proposed class period that dates back to July 2007, let alone one that avoids individualized inquiries as to each Advisor's weekly work schedule. (*See generally* Mot.; Reply.) Even if Plaintiffs were able to prevail at the liability phase of trial by proving that CISC misclassified the Advisors, they offer no methodology for avoiding a burdensome and "fact-intensive, individual analysis" with regard to damages. *See Vinole*, 571 F.3d at 947.

Plaintiffs have failed to show that common questions of law or fact predominate over individualized inquiries with regard to misclassification or damages. The Court finds that Plaintiffs have failed to meet their burden under Rule 23's predominance requirement.

>    2.    <u>Superiority</u>

The superiority inquiry requires a "comparative evaluation of alternative mechanisms of dispute resolution," *Hanlon*, 150 F.3d at 1023, and a class action may prove superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency" than other methods. *Valentino,* 97 F.3d at 1234. In deciding whether a class action would be the superior method for resolving the controversy, the Court considers several factors, including: "[1] the class members' interest in individually controlling the prosecution or defense of separate actions; [2] the extent and nature of any litigation concerning the controversy already begun by or against class members; [3] the desirability or undesirability of concentrating the litigation and of the claims in the particular forum; and [4] the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Neither party directly addresses the extent of any litigation already involving Class members or the desirability of concentrating litigation in this forum. (*See generally* Mot.; Opp'n.) The Court notes, however, that Plaintiffs propose a statewide class (Mot. 1) and, as a result, litigating all claims in this Court may not be convenient for all Class members.

Both parties address the Class members' interest in individually controlling the prosecution of their claims by discussing the Class members' potential recoveries in a successful class action. As a general rule, "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser,* 253 F.3d at 1190. Small damages awards weigh in favor of certification because plaintiffs would otherwise be "unable to proceed as individuals [due to] the disparity between their litigation costs and what they hope to recover."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-09178 SJO (JCx)</u>     **DATE:** <u>October 6, 2014</u>

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *see also Wright v. Linkus Enters., Inc.,* 259 F.R.D. 468, 474 (E.D. Cal. 2009). Plaintiffs contend that "the damages suffered by each individual member of the proposed class may be relatively small" (Mot. 20), while CISC argues that "potential recoveries could be substantial." (Opp'n 20.) Given that Advisors earn $100,000 per year on average (TAC ¶ 10), the proposed class period extends back to July 2007 (Mot. 1), and Plaintiffs worked between 10 and 25 hours per week over the 40 hour maximum (CE Exs. 6-7), it appears that the Class members' claims would likely be substantial. This factor weighs against certification.

Managing Plaintiffs' claims as a class action would likely present several difficulties. As discussed, individualized inquiries abound for the purposes of proving both liability and damages. Further, Plaintiffs offer no plan for avoiding or managing the hundreds of mini-trials necessary to determine the job duties and work hours of more than 1000 Advisors.[15] (*See generally* Mot.; Reply.) The Class members' potential recoveries are likely substantial, and the likelihood of inconsistent judgments in individual lawsuits does not create concern here because, in most cases, determining the applicability of an exemption requires an individualized examination of the actual work performed by the employee. *See Rosenberg*, 2013 WL 3205426, at *8; *Ramirez,* 20 Cal. 4th at 793-94.

Plaintiffs argue that class litigation is the superior mechanism for resolving their disputes based on a fifth factor: the inferiority of filing a claim with the California Labor Commission (the "Commissioner"). (Mot. 20.) "[I]f an employer fails to pay wages in the amount, time, or manner required by contract or statute, the employee may seek administrative relief by filing a wage claim with the [C]ommissioner" or filing an ordinary civil suit. *Post v. Palo/Haklar & Assocs.,* 23 Cal. 4th 942, 946 (2000). The Commissioner has broad authority to investigate employee complaints, hold hearings, and award damages to prevailing employees in wage and hour actions. *See generally* Cal. Lab. Code § 98; *see also Rebolledo v. Tilly's, Inc.,* 228 Cal. App. 4th 900, 914 (2014). The Commissioner also has the authority to issue subpoenas compelling the attendance of witnesses and production of documents and records. Cal. Lab. Code § 74. Overall, the purpose of the Commissioner's hearing procedure is to "provide a speedy, informal, and affordable method of resolving wage claims." *Post,* 23 Cal. 4th at 947 (citation omitted).

Plaintiffs argue that the "alternative of filing a claim with the [Commissioner] is not superior, given the lack of discovery in such proceedings, the fact that there are fewer available remedies, and

---

[15] Courts consider whether plaintiffs have shown how the class trial can be conducted when determining the appropriateness of class certification. *See Valentino*, 97 F.3d at 1234 ("There has been no showing by Plaintiffs of how the class trial could be conducted"); *Zinser,* 253 F.3d at 1189 (holding that a plaintiff seeking certification of a nationwide class "bears the burden of demonstrating 'a suitable and realistic plan for trial of the class claims'") (citation omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-09178 SJO (JCx)</u>          **DATE:** <u>October 6, 2014</u>

[the fact that] the losing party has the right to a de novo trial in the Superior Court of California." (Mot. 20.)  Plaintiffs' argument misses the mark.  Rule 23's superiority inquiry requires the Court to determine whether class certification is the superior method for resolving the plaintiffs' dispute. *Hanlon*, 150 F.3d at 1023.  Here, it is not.  Although Plaintiffs may not be completely satisfied with the Commissioner's procedures, their ability to file a claim with the Commissioner, or file suit individually in civil court, demonstrates that they are not without recourse.

The Court finds that Plaintiffs have failed to demonstrate that class litigation is the superior mechanism for resolving their dispute.

        C.    <u>Rule 23 Analysis</u>

Fundamentally, "[t]he party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *ConocoPhillips,* 593 F.3d at 807 (quoting *Zinser,* 253 F.3d at 1186).  Here, Plaintiffs' Motion falls short in several respects.  First, Plaintiffs can only show the existence of common questions likely to generate common answers for one of the exemptions asserted by CISC.  Second, Plaintiffs, and Alakozai in particular, are neither typical of the Class nor adequate representatives.  Third, Plaintiffs have not been able to show that common questions predominate as to either liability or damages.  Fourth, given the numerous individualized inquiries class litigation would necessitate, and the availability of alternative remedies, Plaintiffs have failed to show that class adjudication is the superior method for resolving their disputes.  In the aggregate, Plaintiffs have failed to show that the adjudication of this matter as a class action promotes judicial economy or protects the rights of Class members who are otherwise unable to present their claims.  *See Haley*, 169 F.R.D. at 647.

The Court **DENIES** class certification as to Plaintiffs' restitution claims.

        D.    <u>Plaintiffs' Penalty Claims</u>

Plaintiffs also seek penalties for CISC's alleged failure to:  (1) pay Class members all of the wages they were due under the applicable labor laws (Cal. Lab. Code § 203); (2) timely pay Class members' wages (Cal. Lab. Code § 210); and (3) provide class members with proper wage statements (Cal. Lab. Code § 226).  (TAC ¶ 43.)  Additionally, Plaintiffs seek numerous penalties under the California Labor Code ("Labor Code") as well as the Private Attorney General's Act ("PAGA") for each of CISC's alleged violations of the Labor Code. (TAC ¶¶ 43, 45.)  Apart from misclassification, Plaintiffs assert no theory on which they could recover against CISC for unpaid wages or improper wage statements. (*See generally* Mot.; Reply.)  Plaintiffs' claims for penalties under the Labor Code and PAGA, therefore, necessitate the same underlying showing as their restitution claims:  that CISC misclassified its Advisors as exempt.  Thus, the same defects that render class certification inappropriate for Plaintiffs' restitution claims weigh against the certification of its penalty claims.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-09178 SJO (JCx)</u>          **DATE:** <u>October 6, 2014</u>

The Court **DENIES** class certification as to Plaintiff's penalty claims.

      E.    <u>Certified Issues Under Rule 23(c)(4)</u>

In their Reply, Plaintiffs request that, should the Court deny their motion, it alternatively certify the following issues under Rule 23(c)(4): "(1) whether [Advisors] are subject to more than general supervision; (2) whether [Advisors] are primarily engaged in work directly related to the management policies or general business operations of [CISC] or its clients; and . . . (3) whether [CISC] has a retail concept." (Reply 6.) Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Thus, where appropriate, the courts have the option to "uphold certification under [Rule 23(c)(4)] as to particular liability issues." *Haley*, 169 F.R.D. at 656.

The request for certification under Rule 23(c)(4) is inappropriate because Plaintiffs did not raise the issue until they filed their Reply. (*See* Reply 6; *see generally* Mot.) As noted in this Court's Initial Standing Order, "[r]eply papers are limited to argument and authorities responsive to the opposition papers." (*See* Initial Standing Order for Cases Assigned to Judge S. James Otero ¶ 20(d) (rev. Oct. 15, 2013).) Further, the courts in this Circuit have held that "issues cannot be raised for the first time in a reply brief." *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) (citing *Alaska Ctr. for Env't v. U.S. Forest Serv.,* 189 F.3d 851, 858 n.4 (9th Cir.1999); *see also Gianino v. Alacer Corp.,* 846 F. Supp. 2d 1096, 1104 n.2 (C.D. Cal. 2012) (citation omitted).

More importantly, certification of these issues would not remedy the underlying defects in Plaintiffs' Motion or "overcome the numerous complexities" raised by Plaintiffs' claims. *See Haley,* 169 F.R.D. at 656. As stated, both the supervision and business operations questions necessitate individualized inquiries as to the Advisors' duties and client base. *See supra* Parts II.A.2.a.i-ii. Further, the claims and defenses applicable to Plaintiffs, due to their bankruptcies, are not typical of the class and present adequacy problems as well. *See supra* Parts II.A.3-4. Finally, upholding certification with regard to particular issues would not address the underlying challenges with and individualized inquiries necessitated by calculating damages for each Class member absent a uniform timekeeping mechanism. *See supra* Part II.B.1.c.

The Court finds certification of Plaintiffs' proposed issues inappropriate under Rule 23(c)(4).

III.    <u>RULING</u>

For the foregoing reasons, the Court **DENIES** the Motion.

IT IS SO ORDERED.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  __CV 11-09178 SJO (JCx)__          **DATE:**  __October 6, 2014__